[No. 7940.  *En Banc.*  June 11, 1909.]

THE STATE OF WASHINGTON, *on the Relation of North Shore Boom & Driving Company, Relator,* v. NICOMEN BOOM COMPANY *et al., Respondents.*[1]

APPEAL—DECISION—JUDGMENT ON REMAND. A decree upon remand properly describes a boom site location where it follows a plat, findings, and complaint specifically referred to and upheld by the decision of the supreme court.

APPEAL—DECISION—EFFECT—QUESTION DECIDED—JUDGMENT AFTER REMAND. Where the decision of the supreme court upholding a boom site location holds that the state has dominion, for the purpose of boom sites, over both land and water, and has conferred upon the boom company the right to operate a boom in certain waters, the decree upon remand properly designates the waters of the river to be appropriated, the decision of the supreme court being *res judicata*.

SAME. Where a complaint asks for an injunction against interference with a boom site, and such relief is denied, a judgment on appeal, which holds that such interference is unwarranted and must be restricted and that the conclusions of the trial court were erroneous, and directs a reversal accordingly, requires the entry, upon remand, of judgment granting the injunctive relief prayed for.

Certiorari to review a judgment of the superior court for Pacific county, Rice, J., entered January 16, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to enjoin the construction of a boom. Affirmed.

*Chas. E. Miller, W. H. Abel,* and *E. C. Hughes,* for relator.

*W. W. Cotton, Welsh & Welsh,* and *James G. Wilson,* for respondents.

MORRIS, J.—The relator brings this writ, alleging that the superior court of Pacific county has entered a decree unwarranted by and contrary to the mandate of this court as expressed in its decree and remittitur filed in the lower court

[1]Reported in 102 Pac. 394.

on January 16, 1906, in the case of *Nicomen Boom Co. v. North Shore Boom & Driving Co.*, which case will be found reported in 40 Wash. 315, 82 Pac. 412, to which reference is hereby made for a more extended review of the facts in controversy between these two companies, and the rulings and decision of this court upon the matters then, and in so far as they may now be, involved. There is much history of litigation between these companies, involving suits at law and in equity in the superior court of Pacific county, in this court, and in the supreme court of the United States, growing out of their respective claims to boom sites in the North river, a recital of much of which would be necessary to a proper understanding of this last phase of the controversy as here now presented; but inasmuch as the matters here directly involved are of no particular moment except to the parties litigant, and present for discussion and decision no points of law, except the determination as to whether the decree of the court below is a correct interpretation of the mandate of this court, we do not refer to them, for the sake of brevity, except in so far as it may be necessary to rule upon the questions suggested.

The first error or departure suggested is in the description of the location of respondent company. The decree adjudges that respondent has a valid prior location for booming purposes, on the waters of, shore lines of, and lands contiguous to, North river, according to its plat, and describes said location as follows:

"All that portion of North river lying and being in Pacific county, Washington, and more particularly described as follows, to wit: Commencing at the mouth of North river, in section 26, township 15, north of range 10 west of Willamette meridian, thence running up said river and on and along the meanders thereof on both banks thereof, and including between said meanders and the shore lines of the waters and all waters and lands contiguous thereto, and river bed of said North river to the point where said North river intersects the north line of section 23," etc.

Relator contends that, under this description, respondent's location is made to embrace the entire bed and tide lands of North river, from the meander line on one side to the meander line on the other, including the lands contiguous thereto on both sides. This description is evidently taken from respondent's plat and survey of location, which it had filed with the secretary of state April 5, 1900, showing so much of the shore lines and waters of North river and lands contiguous thereto as it proposed to appropriate; and the same plat and survey referred to in the court below in its findings, and by this court. Reference is frequently made to the location of the respondent as shown by its plat, so that there could be little doubt in the mind of the court below, when it entered its decree, that this court had determined that respondent was entitled to the use and possession of all the territory embracing both land and water, within the outside lines of its plat. Said decree also describes the tide lands of the respondent. An examination of the original complaint in the action shows these tide lands to be contended for by the respondent, and they are found by the findings of fact as belonging to the respondent and acquired for the purpose of its booming operation, and the decision of this court specifically so refers to said lands.

Relator next contends that the plat of location should not designate the waters of the river proposed to be appropriated. This court, on page 327 of its opinion, thus states its position:

"The state, however, has dominion over both the land and the water. The legislative scheme for boom companies requires that the land owner shall permit his land to be subjected to the use of such companies, upon receiving compensation therefor, and the title is thus acquired. It is true, the state does not pass title to the beds and waters of its streams; but, as an accompaniment of the right to condemn adjacent lands, it has directly conferred upon boom companies the right to locate and operate booms in such waters. As a part of the location plan, the plat and survey shall designate not

only the lands, but the waters, desired to be used. The plat when filed becomes notice to the world of the appropriated territory, and while the state requires the upland owner to submit to the use of his lands, it also confers, directly upon the locator, the right of dominion over the water in aid of the other use. In considering these location rights, we therefore see no reason for making a distinction between those acquired upon land and those acquired in the waters. The state has not only authorized both, but they are combined rights, having in view a common end, and neither would be useful for accomplishment of that end without the aid of the other."

Such contention on the part of the relator is, therefore, *res adjudicata* here, and cannot again be questioned under the holding above quoted. The plat properly showed the waters as well as the land contiguous thereto. The decree of the lower court was, therefore, in accordance with the holding of this court in describing the location of respondent as embracing the waters of North river.

The next contention of relator is that the court below was not justified in granting respondent an injunction. The prayer of the complaint was in part as follows:

"That the defendant, its officers, agents, and employes, and those acting under or in aid of defendant, be forever restrained and prohibited from doing any of the acts complained of in this complaint, and from entering upon the tide lands of said plaintiff, and from entering upon in any manner whatever of the shore lines and waters of said North river within the territory appropriated and used by plaintiff for its said booming works, and from driving any piles, timber or anything else on plaintiff's said tide lands, or any part thereof, and from driving any piling or other thing whatever within said North river or the shore lines thereof, within the territory in Pacific county, Washington, which is appropriated by plaintiff, as described in plaintiff's said exhibit A."

The decree below, from which the appeal was taken to this court, denied respondent's application for such an injunction, and dismissed the action. Thus it will be seen that one of the questions directly submitted to this court upon the ap-

peal was as to the right of respondent to injunctive relief, restraining the relator from doing the things complained of within the territory claimed by respondent as shown by its plat and survey. In passing upon such point, the decision of this court thus reads:

"The court finds that appellant's [respondent's here] contemplated extension cannot be made and operated by reason of respondent's [relator's] boom. The two cannot exist together. It follows that respondent [relator] is unwarrantedly interfering with appellant's [respondent's here] location, and that in its booming operations the former must be restricted to territory outside of the latter's location. We think the court erred in its conclusions of law. The judgment is therefore reversed and the cause remanded, with instructions to make conclusions of law and enter judgment in accordance with what has been herein said."

We fail to see how the court below could have read this language other than it did and, in accordance with its mandate, decree respondent its injunctive relief to the extent of the facts found, and within the territory embraced in its location. Finding no justification for the writ, the judgment is affirmed.

Rudkin, C. J., Chadwick, Mount, Crow, and Parker, JJ., concur.

Fullerton, Gose, and Dunbar, JJ., took no part.